May it please the Court, I am Edmundo Aguilar and I am here on behalf of the California Department of Education responding to an appellant in this matter. This case arises out of an appeal of an administrative proceeding under the Individuals with Disabilities Education Act, which establishes federal standards for providing special education to the nation's public school children. In addition, California has enacted state standards including provisions in the state education and government codes for providing special education services. This matter is the first of four somewhat similar cases which are working their way through the court system. Although it has been expressed in this court that CDE is merely trying to avoid being fiscally responsible, what is really underlying this case is the belief that the legislature has created a comprehensive system for addressing special education to students and has not failed to address those situations involving wards of the court who do not have an identifiable natural parent or a formal legal guardian in the picture. In short, this dispute is not simply about who pays the educational cost related to student's placement, but rather was it intended that the state educational entity, CDE, be directly responsible for providing educational services to students in this case. We do not believe so. In fact, we believe the California legislature did designate which public entity is responsible for providing special education services to students who only have a court-appointed de facto parent. CDE submits that based on state residency requirements, the school district where student's de facto parent, Ms. Hardy, lives determines which entity is responsible for providing special education services in this case. Well, maybe you could walk us, as we asked you in our order, to address these statutes so we can figure out in this evolving amendment of the statutes, there are three iterations that go across these various time period and statuses, so maybe you could address the question that we posed. Yes, as I understand it from the perspective of the parent and where that comes in and how it applies to the de facto parent in this case, or guardian now, I suppose. As I understand the court's order, it was with regard to the trial court's decision and the BP and RR cases. Well, it was because it overlaps with the issues in this case. We're not trying to litigate those cases, we're trying to focus because there is a need for an explanation from the state how you work this through the definitional issue here because we have a statute that gets amended and the status of the de facto parent gets modified at various points, so we've got a lot of moving parts here, so it would be very helpful for us to understand how the state is interpreting the statutory framework. Yes, Your Honor. Not in generalizations about broad policy, but just help us work our way through the California statutory scheme. Yes, Your Honor. You can talk about the breadth, but you've done that, now get down to the micro analysis. Thank you, Your Honor. I think in this case, what we're talking about is sections 56028, which is this definition system section within the special education portion of the education code, and we're also talking about the state residency requirements, the principal one, which is found at 48200, and I think the first question is whether Ms. Hardy, who was pointed as a de facto parent in July of 2006, whether she falls within 56028, and it's our position that, you know, as the court has pointed out, that that statute was amended three times. Once, well, there was one section in effect from October of 2007 until October of 2007, October 9th, and then another section that was in effect from October 10th, 2007, until December 31st, 2008, and it's our position that under each version of that statute, that Ms. Hardy's, I guess, position as a de facto parent would be covered. In particular, we think that under subdivision 3, which calls for, which talks about definitions, and it says that a parent for special education is, in special education law, is defined as a parent, and there's several definitions, there's three or four, but one that we focus on particularly is the one that says that one that acts in the place of a parent, and we think that although Ms. Hardy was appointed as a de facto parent, in effect, she was acting in the place of a parent during these proceedings, and by the proceedings, I mean the IEP, the placement discussions, I mean, the record's clear that she attended those, and in fact Excuse me, counsel, let's try to take you back to what I think is one of the heart of the issues here, and that is how you harmonize the changes from year to year, so if you go back to 05, and you know what the language was then, which had the language, parent includes any of the following, and then you move to 07, and then there's a language change to the purpose of the section. Help us understand in each of those years, 05, 07, and 09, how those if you say the statute means the same thing, despite the language changes, and the note that was indicated that the 09 change broadened the statute, so if you could harmonize those for us, I think it would help us. There's two things that I'd like to respond with regard to that question, then, Your Honor. One is I think that it started out broadly, and I think as the legislature went along they clarified. So that's how we would contend that it is harmonized, in the sense that there was a broad, broad statement of parent within the special education provisions, and as time passed, there was, the legislature decided to further clarify that. And with regard to the term broaden, I mean, that's the term that ledge counsel used in their analysis, but really what the committee report said, and what the analysis that were before the legislature, as they deliberated this, so that would be. I think that back to a more specific question. When it says, for the purposes of this section in 2007, and that's the language change, does that restrict the definition of the parent under 56028B2 to only that section, or can it be applied over at 48200?  And I think that with regard to that language in the 2007 version, at B2, I think you have to look at B1, which talks about, you know, where there's a natural parent in the picture, and where there is a court-appointed parent, and there's some interplay between the two, and I think that they were intending to clarify that where there is a natural parent or not, if there's somebody appointed pursuant to 1, 2, 3, or 4, then that should be considered parent overall. And I think that's what that, the meaning of that section, that language change, is that it's not a requirement, Your Honor, at that time. And I thought that, I think that the legislature decided that they needed to clarify that further, and then subsequently they ended up adding the language relating it back to 48200. But we've, it's our position that that's always been there, that that has always been there. Roberts. Does something change in the cases that Judge Fischer referred to that we asked you to comment on? Have those cases changed your approach or analysis in any way? No, no, Your Honor. I mean, we strictly disagree with the trial court's determination in those two opinions. We think that there is a relationship between, because in that case, the court did find that there is, that that responsible adult in those cases was covered within 56028, but the court found there was no relationship between 56028 and 48200. And based on a couple of things, one thing being that they cite the Ninth Court's decision in Union School District, which we've cited in the case, that we've cited in our brief, as saying that special education children should be subject to the ordinary test for residency. We don't think that changes anything, meaning that the ordinary test for residency is, if you look at 48200, is where the parent or guardian reside. And by taking into consideration the definitions in 56028, you're not changing that test. You're just, you're just considering the context that this is a special education child who has complex needs, who may be in a variety of settings, and that you have to take those into account. And I would, as further evidence of that, I think I would point to Section 5 of the State Education Code that just because one section is listed in a different part of the Education Code doesn't mean that it changes its meaning or it should be considered differently. It's all considered one, one legislative scheme for purposes of educating children. Well, was the case you alluded to, was that, or actually identified, was that a residency issue or was that a definition of parent issue? The two cases that No, the unified, I think you said there was a unified case Yeah, in that case, it had to do with a child who was attending school in Los Angeles, or Pasadena, I think, in fact. And his parents had a permanent residency in San Jose. And what happened is that the Pasadena school thought, or actually San Jose thought, that they shouldn't be paying for this, you know, be paying for the educational service because the student, the parents maintained a temporary residence in the Los Angeles area. What's the lesson we should take from that case and how should we apply it here? The lesson is that there's a big lesson. I think the big lesson is that the Ninth Circuit in that case said that you can't just look at special education provisions to look at special education kids, that you've got to look at the general principles in the State Education Code. And those were embodied in 48-200. They applied that. They applied that in that case. And I think that you can't, you're not limited, you have to expand the definition of parent for special education students. And you can't consider 48-200 in isolation and just say if it's a parent or an actual guardian, that's your residency. I think if you look at the special education scheme or that part of the education code that relates to special education kids, you consider that there's different scenarios. But in all cases, it's the local school districts that are responsible. What's being, the court's being asked to do here is to decide that it's a state educational entity, CDE, which isn't even for students in local school districts. You know, and I think that, so the lesson again is that... Well, this is ultimately what we're talking about in this case, though, is who's responsible for the funding. Well, it goes beyond that, Your Honor. It's who's responsible for providing services. Not just the funding, but who's responsible for providing services, which means attending the IEPs, providing related services, being involved in all facets of that child's education. Okay. You want to save the rest of your time? Yes, I do. Good morning. May it please the Court. Karen Van Dyke on behalf of the Orange County Department of Education. Your Honors, I was very happy to see that you looked at those cases recently issued by the Central District of California. I think the issue in that case is dispositive, not only of the case that we have here, but all of the cases that are currently before the Court. I am aware of four of them. I have also been made aware that there are others that are similar in L.A. County. I've also received phone calls from other counties having difficulty with this issue. So what I'd like to do is impress upon the Court that this Court's decision could head off a lot of... As I try to encourage counsel to do, we get specific. Can you address, walk us through how you would construe the statute? Well, Your Honor, as set forth in the brief, the previous iterations of 56028 were specifically limited to the special education provisions found in Part 30 of the Education Code. 56020, in fact, cited in page 30 of OCDE's brief, points to that section and it basically says that the definitions in this part are limited to this part unless the context otherwise requires. So that very first statute, Section 56028, didn't state that it applied more broadly to a residency provisions of the Education Code. So under 56020, it would be just limited to those special ed. provisions and not overly expanded to those found in 48200. Now, is he a special ed. student in this case? Yes, Your Honor. And when you move to the next iteration, in 2007, the context does specifically state that it's limited to the purposes of this section and to this part, which was Part 30. That's found in both 56028A21 and A22. And again, that can be referenced in the briefing. And so when the legislature specifically limits it to that section, I don't know how you would get to the point where you would overexpand it and have it apply to the 48200 provisions of the residency. Well, aren't you trying to identify, isn't it critical in the analysis that you know who the parent is as an inherent part of the resolution of residency so you can determine what entity is going to provide the funding services or all the services? That is a critical component. And Education 48200 does have the parent language and has legal guardian language. It doesn't have general guardian language contained within that section. And so CDE argues that this more expansive guardian definition recently found to include responsible adults by the central district, CDE claims that that's somehow already contained in 48200 says legal guardian or parent. If the California legislature meant to create such a broad definition of parent, why would it include legal guardian? It could have just said parent and left it there. Does 48200 define parent? No, it does not. Then how do you know who the parent is? Well, we look to other definitions within the code. There are a number of different definitions. If you cite it in the brief, one of them does pertain to educational records and a parent's right to obtain educational records for a student. That's a general education provision that relates to all students within the state. Well, if this is a special ed student, why wouldn't you simply go to 560.28b2? Well, first of all, because prior to 1109, it was limited. But secondarily, I think under Union v. Smith, it violates those provisions. In Union v. Smith, it basically stated that residency determinations for special education students shall be the same as those for non-special education students. 560.28 only applies to children that are eligible for special education for educational decision-making purposes, to sign IEPs, to sign assessment plans, to get those educational things going. General education students don't necessarily have those types of parents, nor do they fit under those definitions. So arguably, if you have a general education student trying to determine residency, they can't access those provisions. In other words, they won't have the flexibility to choose which school district they would like to attend based upon a broader definition of the term parent, whereas special education students who have those access to those provisions could then use those provisions to choose where to go to school. The residency, 48200, is just classic residency for all the purposes that we have discussed. So I think it's important in education. That said, your approach would be then and I think Judge Fischer's question certainly share that, is harmonize those, walk us through those statutes and tell us why counsel's interpretation is erroneous and why the interpretation of Judge Selmer in the last two cases is correct. Well, I think in terms of the 56, well, let's start here. The interpretations across the board have been all over the board, as pointed out in our brief, but I'm going to take the CD's current position about A3 being person acting in the place of a parent. A de facto parent didn't act in the place of a parent. A de facto parent is an individual that's appointed by the court, typically their aunts or somebody who doesn't have the legal right to, you know, custody rights, physical custody, legal custody, but they have something to offer the court in dependency proceedings. And that could be, you know, items pertaining to the child's best interest, perhaps that person has a bond that needs to be continued and so for placement purposes they want that. So they have rights in terms of being there and de facto parents don't have any more than that. So I think that they're not acting in the place of the parent by definition of being a de facto parent. It's a footnote here that the child in question, the parental rights have been terminated so there was no parent per se, correct? Correct, Your Honor. So who was acting as parent? Who was acting as his parent? Well, he was a dependent of the state of California, so care and custody was vested with social services and the court and the court was acting on his best behalf. And wasn't Ms. Hardy appointed? Ms. Hardy was appointed as a de facto parent and she was able to attend the proceedings and she was able to have input on the proceedings. I am not aware that she had been granted any legal rights whatsoever. We can As a special ed, she actually filled the role of a parent, didn't she? For special education purposes, yes. So I didn't mean to lose track, but let's get back to 05, 07. Okay, so moving on, we would contend that under A3, she doesn't fit that definition. And that was of the 2005 iteration that was the one that was in effect at the time of this child's placement in 2006. Now on the next, we would contend that that should follow forward. But in the 2007 version, this child had already been placed, there was already a settlement agreement where OCDE was paying, CDE was aware of the issues, but the decision changed. So now we have a situation where you have the guardian under A4 and the argument all of a sudden changed to being now the de facto parent is a guardian. And I think that that shift between he fits under one provision now, but another provision later, I don't think that that meshes. I don't think that's a clean system. The IDEA compels the state to have a system where everybody could figure out where these children are supposed to go. And by the mere fact of having the OAH change their opinion and CDE change their opinion, no one knew where this child was to go. So we have the new definition of guardian. Now we're saying that the mere right to make for in terms of responsible adults didn't agree. He felt that that did actually fit that definition. So for the reasons set forth in our briefing, I think that we may respectfully disagree. I would say that the entire analysis may be irrelevant if this court finds that 48200 simply doesn't look to 56028 to define parent. Now after 1109, we have a new definition. I think that statement was made. 56028 did apply to 48200. There's still a question whether de facto parents fit under that definition. Responsible adults were specifically listed. The court could find that de facto parents are equivalent and find that he does fit that definition. But I would say the definition of guardian under the January. I would say it's not entirely clear because when you look at that provision, you have responsible adults specifically listed. I don't have documentation that delineates exactly what Ms. Hardy can and can't do. For purposes of this proceeding, OCDE had educational decision-making rights. We had her for four months. There was no reason to believe that she didn't. We awaited some documentation, never received it. But because he was in the jurisdiction for such a small period of time, we weren't really able to follow up. And we had never received anything. As of today, I don't know what her legal rights are. What do you mean you stipulated for purposes? Well, for purposes of the underlying proceeding, she had been making educational decisions for the child. Student's counsel had made that representation that she had those rights. And so we had agreed that she had those rights. But that's all it takes if the guardian authorized to make educational decisions? Correct. But what I'm saying is that since this child's not in our jurisdiction anymore, that was something OCDE openly agreed to, wasn't going to dispute that. But I can't say that another jurisdiction faced with the same question would have that same interpretation. Right. Okay. Now, counsel refers to Section 5 of the California Education Code for the proposition that somehow the code should be all read together. I just wanted to point out to this Court, it's not in the pleadings, but I have looked at it. And that only deals with headings. It doesn't deal with the entire scheme of the education system. So I would encourage you to look at that if that is something that you find important to this analysis. I'm sorry, I didn't hear the last part of what, the middle part of what you said. About Section 5? Yes. It relates to the headings. And essentially what it says is that the headings don't have any, don't read into the titles. So I just wanted to bring that up in case that was something that... And finally, one of the contentions of CDE was that they've never directly served children. That's not true. CDE directly serves children through the California School for the Deaf and the California School for the Blind. So they are equipped to do that. And finally... I have a question for you before. Is there any significance to the fact that he was sent to Cinnamon Hills in 2006 and the 2005 version was in 2008B2? At the date that he was sent to Cinnamon Hills? I think it affects the version of the statute you're looking at. I think you really do have to focus on the version that was in effect at the time because that's what all parties were going off of. That's what all parties were looking to CDE and OAH for guidance on. Now we're looking hindsight about all of the versions and how we can kind of backfill the gaps. But at the time, understand, we had decisions all over the board. We had CDE and OAH proceedings directly saying that their contention now has no merit. So again, I would contend that the system that was created, however this court decides, was not the type of system that was envisioned under the IDEA. CDE is the safety net for these children. This is a significantly disabled child that, suffice to say, required intense special education services. It's this type of child that really needs that safety net. And so I think there needs to be a strong statement that there is that safety net. So we don't have to wait five years to get new legislation to cover these children. CDE? Let me focus for just a minute on the remedy. To this point, OCDE has paid the money for his education at Cinnamon Hills. Is that correct? After 1-1-0-9 in approximately April, the court transitioned and I'm not 100 percent sure of the date because we weren't necessarily involved in this. But the de facto parent became the responsible adult. Okay. So Ms. Hardy, is that then the Orange Unified School District that was responsible? That's my understanding. Okay. But that was as of April of 2009. And that was after. And prior to April of 2009, then, that OCDE has paid the money? Yes. OCDE entered into a settlement agreement so the child wouldn't, would be able to access his services. If we were to disagree with you, then everything should just stay in place. Is that right? No adjustment in funds is going to be necessary here. Is that correct? If you disagree with OCDE's position? If you disagree with OCDE. Yes. If you do not find that CDE is responsible, then the funding... If we were to agree with OCDE, then what should happen here? Well, I think that OCDE is obligated to reimburse the county for the funds that it has expended on the program. OCDE was not legally required to do that. I think you misspoke. If we agree with you, then CDE is responsible for reimbursing. Yes. Is that right? That's correct. Reimbursing you up through what point? I would contend April of 2009 and... And not January of 2009? Correct. And here's why. Because up to that point, Ms. Hardy was a de facto parent. And so until that point, the law was never clear about that particular classification. Now, as Judge Selma pointed out in the last page of the decision, if CDE essentially created this mess, and if they don't agree for that last four months to pay that mess, they should go after Orange Unified for that responsibility, and not OCDE, an agency that was never responsible in the first place. Okay. Thank you. Thank you, Your Honor. Any more questions? No. I have some brief comments, but I'll answer any questions. I just wanted to point out this. Your Honor, I'm the minor's... Yes. And I did want to speak to the issue of... She's the real party in interest, I think. Well, I understand that. But usually, arrangements are made to split time between counsel. I will give you a few minutes. Thanks. Thank you, Your Honor. My name is Kathleen Lawyer, and I do represent... Could you pull the mic in a little? A little shorter. I thought it might be helpful for me to address the Court in that I think that there's some factual confusion about the minor and Ms. Hardy's status at any given time. And I would like to provide that for you. Go ahead. Do it. Ms. Hardy was the minor's foster mother and legal guardian. At one point in time. But both of those appointments were vacated. And at the time that this event occurred, she only had de facto parent status. The event being Cinnamon Hills. I beg your pardon? The event being Cinnamon Hills. The event being the placement and the IPs preceding that. At the time, she was granted de facto status, which allowed her to be present in the dependency proceedings only because of her history with the child and ability to assist the Court in making decisions. The other thing that I think is very important is that the way the placement was effectuated was a consent order by the judge. And any IP decisions that occurred at the time had to be taken back to the Court to make sure the Court approved of what was going on because that's where care and custody was vested. And so I think that's an important issue. This is all in your own materials that you supplied? Is your recitation, the factual recitation in your materials? It is in the original pleadings and the stipulated facts from the lower court. The other issue that I think is important is when having worked with the dependency court for over 10 years now, I can tell you that this is not an isolated incident. It is unique in that this child was virtually made homeless by the events that occurred. In the two-year statute of limitations, prior to the filing of due process, he was in nine different placements. And I think that's really important because when we first filed this action, we named all nine districts. There was that much confusion over who was going to be ultimately responsible. I don't think anybody on this panel, having read all the materials, would debate that point. There was a lot of confusion. And I think that the hindsight that's being expressed now by the State is a little bit disingenuous. I also would like to point out to the Court that in a 1992 case, Ballenger v. Madera, the Court addressed the State's responsibility. It was in the context of 11th Amendment protection. But it did make a definitive statement that the public schools are a central government function and that the LEAs were viewed as State agents, which supported the concept of that case. And I think that is applicable here, that if we don't have this clear line of authority, then this is going to happen again and again. If the county had not stepped up and agreed in the context of this confidential settlement agreement to place this child, he would literally be bouncing from hospital to hospital to this day because no determination would have been made for placement. And I think that's an important thing. I also would like to let the Court know that Ms. Hardy was appointed on April 15th, 2009. That's when she was officially appointed by the Court as the responsible adult for educational decisions. But the child now has aged out. He's 18. And so he's his own man now. And that's his status right now. Thank you very much. First, I'd like to respond if the Court has any questions, any particular questions. I did give you a question, but you've used that time up, so go ahead. Just a couple of brief comments. I think that as counsel for OCDE has cited, I don't believe that determining that this child's de facto parent is a parent for purposes of the residency requirements is inconsistent with the Nyserkes decision in Union School. I think that that decision says that special education children should be subject to the ordinary test. And the ordinary test here is the residence where the parent is. What we're asking this Court to consider and to ultimately rule on is that for purposes of special education children, which this Court has seen can be very complex situations, that the definitions in special education of parents should be considered. And I'll leave it at that. What? Should be considered for purposes of the residency requirements. All right. Thank you. Thank you. All right. Case argued is submitted. Thank you all. And the next case on calendar is Beacon Healthcare Services versus Leavitt.     Thank you. Thank you.
judges: Shea, Fisher, Bybee